EXHIBIT A

CO9102

RECEIVED DEC 27 1995

# AGREEMENT

# BY AND BETWEEN

# INDEPENDENT MASONRY CONTRACTORS

# AND

# INTERNATIONAL UNION OF BRICKLAYERS & ALLIED CRAFTSMEN LOCAL 7 COLORADO AFL-CIO

# INTERNATIONAL UNION OF BRICKLAYERS & ALLIED CRAFTSMEN LOCAL NUMBER ONE OF COLORADO AFL-CIO

## INDEX

|  | PAGE |
|---|---|
| PREAMBLE | 1 |
| SECTION 1 - SCOPE OF AGREEMENT | 1 |
| SECTION 2 - EMPLOYER PERFORMANCE AND MATERIALS | 3 |
| SECTION 3 - DISPUTES AND MISUNDERSTANDINGS | 3 |
| SECTION 4 - WAGES AND HOURS | 4 |
| SECTION 5 - SAVINGS CLAUSE | 7 |
| SECTION 6 - DUES CHECK-OFF | 8 |
| SECTION 7 - SCAFFOLDING | 8 |
| SECTION 8 - JOB STEWARD | 9 |
| SECTION 9 - TRADE RULES | 10 |
| SECTION 10 - OBLIGATION OF PARTIES | 12 |
| SECTION 11 - TRUST FUNDS | 12 |
| SECTION 12 - TRUST PAYMENTS AND REPORTS | 15 |
| SECTION 13 - UNION MEMBERSHIP | 15 |
| SECTION 14 - EQUALLY FAVORABLE TERMS AND CONDITIONS | 15 |
| SECTION 15 - BONDING | 16 |
| SECTION 16 - TRADE COMMITTEE | 17 |
| APPENDIX A - RATES | 18-19 |
| SECTION 17 - GENERAL UNDERSTANDING | 20 |

AGREEMENT

PREAMBLE

This Agreement is made and entered into as of January 1, 1991 by and between_____
hereinafter referred to as "Employer" or "Contractor" and International Union of Bricklayers and Allied Craftsmen Local Union No. One of Colorado, AFL-CIO hereinafter referred to as the "Union", to establish wages, working conditions and terms of employment for journeymen and apprentice bricklayers, stonemasons, pointers, caulkers, cleaners, blocklayers and allied craftsmen and workers employed by the Employer.

SECTION 1 - SCOPE OF AGREEMENT

1.    The territory covered by this Agreement includes the counties of Denver, Adams, Arapahoe, Douglas, Jefferson, Clear Creek, Gilpin, Summit, Routt, Pitkin and Eagle, in the state of Colorado.

2. This Agreement covers all construction work within the jurisdiction of the International Union of Bricklayers and Allied Craftsmen, AFL-CIO, as defined in the Constitution of the International Union of Bricklayers and Allied Craftsmen, as well as all other work normally and traditionally assigned to and performed by employees represented by the International Union of Bricklayers and Allied Craftsmen, AFL-CIO, brick masonry, stone masonry, artificial masonry, cement masonry, plastering, marble, mosaic and terrazzo work, tile layers work and pointing-cleaning-caulking. The Employer agrees to assign to employees, journeymen, apprentice, and support personnel represented by the International Union of Bricklayers and Allied Craftsmen Local Union No. One of Colorado all work which has been historically or traditionally assigned to members of the International Union of Bricklayers and Allied Craftsmen, AFL-CIO, including but not limited to: all forms of masonry construction, including all brick, stone, concrete block, marble, plaster, mosaic, tile, terrazzo, terra cotta, glass block, refractory maintenance, and pointing-cleaning-caulking work; the complete installation of all forms of masonry panels including the off and/or on-site fabrication, all integral elements of masonry construction and all forms of substitute materials or building systems thereto utilized in all forms of construction, maintenance, repair and renovation. If Union cleaners and weldors are unavailable, contractors may look to other remedies.

3.(a) The Union will, to the best of its ability, furnish workmen who are qualified and competent to perform the work of their craft jurisdiction when so requested by the Employer.

(b) The parties agree that work should be equitably distributed and that no worker should be allowed to hold two jobs or to "moonlight" when qualified workers are unemployed and available for work. The Employer, therefore, shall not knowingly hire or retain in his employment any person who is otherwise employed at any time when

1

the Employer knows or is informed by the Union that a qualified worker is unemployed and available. In no event shall there be any discrimination in hiring or employment by reason of Union membership.

4. The provisions of this Agreement are intended to cover the recognized jurisdiction of the International Union of Bricklayers and Allied Craftsmen as follows:

(a) All precast work, including plumbing, setting, aligning, pointing, caulking, patching, siliconing, cleaning, placing and grouting of all materials containing brick or stone or brick or stone products.

(b) The work of installing all fabricated or manufactured panels and other units and materials, including, but not limited to, prestressed concrete, stone, synthetic materials, imitation stone, and precast or prefabricated units, shall be performed by journeyman and apprentice bricklayers working under this Agreement.

(c) The work of manufacturing or fabricating of all panels, units and materials referred to in subparagraph (b), including the placing therein of reinforcing steel, bolts and connection devices, shall be performed by journeymen and apprentice bricklayers working under the provisions of this Agreement.

(d) All panel units and other materials fabricated or manufactured with building tradesmen, or under the supervision of bricklayers, shall be installed by journeymen and apprentice bricklayers working under this Agreement.

(e) The work of installing shall include the rigging, hooking on, signaling, landing, plumbing, aligning, leveling, waterproofing, and anchoring, including bolting and welding.

5. It shall be the obligation of the Employer to insure compliance with this Agreement on all work covered by its provisions, whether such work is performed for the employer or for a subcontractor. To this end the Employer shall incorporate in each subcontract to which it shall become a party all terms, provision, conditions and requirements of this Agreement to the extent that the same are applicable to the work to be performed under said Agreement, and the Employer shall secure compliance therewith by each subcontractor. The Employer shall be liable to the Union and to the employees involved for any breach or violation of any such provision, condition or requirement by any subcontractor.

6. All work covered by this Agreement shall be performed by workers under the same standards of compensation and working conditions as are provided in this Agreement. Nothing contained in this paragraph shall restrict the right of the Employer to contract with, or engage in business with, or use the products, or goods or services of, any other person, firm or corporation, provided that such goods, products, or services are produced at a location separate and apart from the job site and separate and apart from the Employer's premises by a supplier regularly engaged in the producing such goods, products, or services.

2

## SECTION 2 - EMPLOYER PERFORMANCE AND MATERIALS

1. A General contractor is defined as a construction employer who is performing construction work under the terms of a prime contract negotiated directly with a owner or operator.

2. As used in this contract, the term "subcontract" shall include any arrangement under which the Employer permits any other person, firm or corporation other than its own employees, to perform work for which the Employer has primary responsibility.

3. It is recognized that a subcontractor is responsible to a general contractor for work performance and no working rules contained herein are intended to restrict the cooperation between subcontractor and general contractor which is necessary for successful job performance.

4. All general contractors and subcontractors will have the right to make the necessary deductions from all masons wages as required by State and Federal laws, all fringe benefit deductions authorized by this Agreement, and shall carry Unemployment Insurance and Workman's Compensation Insurance on all employees who are subject to the terms of this Agreement.

5. The Employers will furnish to each employee a record of wages earned, Social Security tax, each fringe benefit, and any other authorized deductions with each weekly paycheck.

6. At least fifty percent (50%) of the masons and apprentices on the job shall be hired in the locality of the job if workers are available. Every sixth brickmason on each job, and multiples thereafter, shall be 55 years of age or older when such employees are available, provided, however, that nothing herein shall be construed to justify any discrimination against an employee or prospective employee between the ages of 40 and 70.

## SECTION 3 - DISPUTES AND MISUNDERSTANDINGS

1. A grievance must be submitted to the Employer within ten (10) working days after it arises or it shall be deemed waived, provided however, that a continuing grievance may be submitted to the Employer at any time and including the tenth (10) working day after the cessation of the acts or conduct giving rise to the grievance, and provided further, that the Employer's liability, if any, for monetary loss or damage shall, in any case, be limited to the period commencing ten (10) working days prior to the date of the submission of the grievance to the Employer.

2. If a grievance is not resolved within ten (10) working days after it has been submitted to the Employer, the Union may submit such grievance to arbitration by giving written notice of its intent to do so to the Employer within twenty five (25) working days after the grievance was first submitted to the Employer.

3. If a timely demand for arbitration is made, the parties shall

3

attempt to agree upon an arbitrator. If the parties are unable to agree upon an arbitrator within ten (10) calendar days after written demand for arbitration has been received by the Employer, the parties may request a panel of five (5) arbitrators residing in Colorado to be designated by the Federal Mediation and Conciliation Service. Each party shall strike the names of two (2) members of such panel, the remaining person to be the arbitrator.

4.    The arbitrator shall not have the power to add to, subtract from, or modify any of the terms of this Agreement and his decision shall be final and binding upon the parties. The cost of the arbitration shall be divided equally between the parties.

5.  All time limits provided for in this section may be extended by mutual agreement.

6. Nothing contained in this section shall be construed to bar an action in law or equity against an Employer who defaults in his or its obligation to pay wages or contributions to trust funds as required by this Agreement. Any such action in law or in equity may be initiated without first exhausting the grievance or arbitration procedures herein provided.

7. The foregoing provisions govern the settlement of disputes and misunderstandings between the Union and Employer represented by the Colorado Mason Contractors Association, Inc. other than a dispute over work jurisdiction. Any dispute over work jurisdiction between the Union and an Employer represented by the Colorado Mason Contractors Association, Inc. which such parties are not able to resolve will be referred to the International office of the International Union of Bricklayers and Allied Craftsmen AFL-CIO for an amicable adjustment between that office and the main office of the Mason Contractors Association of America, Inc. It is expressly understood and agreed that the procedure for the adjustment of disputes over work jurisdiction set out in this paragraph 7 is exclusive and supersedes any other plan, method or procedure referred to in any other portion of this Agreement or any other instrument.

8. During the term of this Agreement, excepting only as specifically provided in Section 4, paragraph 13 and 14, there shall be no strike, work stoppage, or slowdown of work on the part of the Union or its members, or a lockout on the part of the Employer.

SECTION 4 - WAGES AND HOURS

1. The base hourly wage rate for each journeyman employee shall be as set forth in Appendix A attached to this Agreement for each hour or fraction thereof for which pay is received.

2. The base hourly wage rate for foreman shall be an amount equal to the journeyman base hourly wage rate plus one dollar seventy five cents ($1.75) per hour. There shall be a bricklayer foreman on every job.

3. The base hourly wage rate for layout work shall be paid for at

4

CD9102

the journeyman base hourly wage rate plus seventy five cents ($.75) per hour.

4. Composite crews with other crafts may be established upon request of the Employer but only by mutual consent of the parties involved on work of a composite nature to meet a particular situation, in which event the journeyman's base wage rate of the higher craft shall prevail for all employees in the composite crew.

5.(a) The base hourly wage rates of Apprentices shall be: An apprentice shall work as a first stage apprentice until he/she has worked at least six months and at least 750 hours, after which he/she shall become a second stage apprentice. A second stage apprentice shall work in such classification at least six months and 750 hours, after which he/she shall become a third stage apprentice. A third stage apprentice shall work in such classification at least six months and at least 750 hours, after which he/she shall become a fourth stage apprentice. A fourth stage apprentice shall work in such classification at least six months and at least 750 hours, after which he/she shall become a fifth stage apprentice. A fifth stage apprentice shall work in such classification at least six months and at least 750 hours, after which he/she shall become a sixth stage apprentice.

The base hourly wage rate of an apprentice shall be the following percentages of journeyman hourly base wage rates:

| | |
|---|---|
| First Stage | 40% |
| Second Stage | 50% |
| Third Stage | 60% |
| Fourth Stage | 70% |
| Fifth Stage | 80% |
| Sixth Stage | 90% |

If the term of an apprentice is extended beyond 4500 hours, the base hourly wage rate will remain at the 90% rate until he or she becomes a journeyman.

(b) The base hourly wage rate for apprentice cleaner, pointer, and caulkers (CPC) shall be:

| | |
|---|---|
| 0000 - 1000 hours - | 40% of journeyman's wage rate |
| 1000 - 2000 hours - | 53% of journeyman's wage rate |
| 2000 - 3000 hours - | 66% of journeyman's wage rate |
| 3000 - 4000 hours - | 80% of journeyman's wage rate |

If the term of an apprentice C.P.C. is extended beyond 4000 hours, the base hourly wage rate will remain at 80% until he or she becomes a journeyman.

6. The standard workday and workweek shall consist of either five (5) consecutive days at eight eight (8) hours per shift or four (4) consecutive days at ten (10) hours per shift, Monday through Friday. Regular work hours will be between 6:00 a.m. and 6:00 p.m. In the event the Employer is unable to work forty (40) straight time hours during the scheduled work week due to inclement weather,

Saturday may be utilized as a make-up day; and all hours on Saturday up to forty (40) straight time hours in the workweek shall be paid at the straight time rate of pay. In the event the Employer implements a shift consisting of four, ten-hour days, it is understood that Friday/Saturday will then become the make-up day as prescribed above. The Employer may establish a shift consisting of a four, ten hour days, at any time when considered necessary. All overtime hours worked in excess of eight (8) per shift on the five (5) day, eight (8) hour shift, or in excess of ten (10) hours per shift on the four (4) day, ten (10) hour shift shall be paid at time and one-half(1-1/2x) the straight time hourly rate. All time worked over forty (40) straight time hours per week shall be paid at time and one-half (1-1/2x) the straight time rate Monday through Saturday. All work performed on Sunday and the following recognized holidays; New Years Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day and Christmas Day, shall be paid at the rate of one and one-half (1-1/2x) time the straight time hourly rate. When a holiday falls on Sunday, the following Monday will be observed as the holiday. On National Election Day (Presidential Election) all work shall be shut down at 3:30 p.m. with one extra hours pay, providing the employee turns in a validation signed by a poll judge in his precinct showing that he has voted. This validation shall be submitted to the Employer within three days.

7. When an employee covered by this Agreement is ordered by the Employer or his/her representative to report to work and then, through no fault of the employee, is not put to work or employed for less than two (2) hours, the Employer shall pay him/her for the two hours unless work is made impossible because of adverse weather conditions.

8. If an employee is discharged before 10:00 a.m., by the Employer he/she shall receive two (2) hours pay.

9. When computing the straight time or overtime pay for an employee, the time involved shall not be reduced to periods of less than thirty (30) minutes based on hours worked. Notwithstanding any other provision of this Agreement, this shall apply equally to all wages and fringes.

10. Employees must be paid at the regular rate of wage when going from one job to another during working hours, and employees shall not travel during their lunch period. When work is not ready at the new job site and a layoff results, each employee assigned to such job shall receive two (2) hours pay at his/her regular rate of wage, or pay for the remaining time of his/her regular shift, whichever amount is greater.

11. Contractors shall not lay off or discharge members of this Union by telephone, but shall lay off during working hours, giving thirty (30) minutes notice, and paying in full. If not, the employee shall be paid waiting time at the prevailing rate of wages, providing the employee remains on the job site during working hours his/her time is to go until paid.

12. When an employee quits a job on his/her own accord, he/she shall not receive his/her pay until the regular pay day.

13. Pay day shall not be later than thirty minutes before quitting time on Friday of each week. Employees shall receive their pay on the job for all time worked up to and including the previous Saturday. Failure to pay on Friday, except by permission of the Union, will cause stoppage of work until employees are paid. No mason will be allowed to work for any Employer who fails to pay his/her employees on the regular pay day.

14. If the Employer pays in non-negotiable checks or is delinquent in payments due Trust Funds pursuant to this Agreement, all his/her work shall be stopped until masons are paid in full.

15. When an Employer considers it necessary to shut down a job to avoid the possible loss of human life, because of an emergency situation that could endanger the life and safety of an employee, in such case, employees will be compensated only for the actual time worked.

16. Multiple shifts may be established when considered necessary by the Employer. The Employer reserves the right to implement different shift schedules for different operations.
(a) The Employer shall notify the Union with two (2) days notice of the starting and quitting time of all second or third shifts in advance of initiation of said shifts.
(b) If two (2) five (5) day eight (8) hour shifts are utilized, they will both work eight (8) hours for eight (8) hours pay, exclusive of lunch. If two (2) four (4) day ten (10) hour shifts are utilized, they will both work ten (10) hours for ten (10) hours pay, exclusive of lunch.
(c) On a three (3) shift operation, shift hours and rates will be as follows:

First shift: 8 hours work plus 1/2 hour for lunch; 8 hours pay.

Second shift: 7-1/2 hours work, plus 1/2 hour for lunch; 8 hours pay.

Third shift: 7 hours work, plus 1/2 hour for lunch; 8 hours pay. On a three (3) shift operation, 8 hours shall be credited as time worked for purposes of fringe benefit payments and overtime calculation.

All hours worked in excess of the established shifts shall be paid at the applicable overtime rate.

## SECTION 5 - SAVINGS CLAUSE

1. The parties hereto agree that any provision in this Agreement which now or hereafter may be declared to be in contravention of the National Labor Relations Act, as amended, or the Colorado Labor Peace Act shall be considered to be null and void.
2. Should any clause or provision of this Agreement be declared or determined to be illegal or in conflict with any National law or Federal regulation covering the business of the Employer or the Union,

or in conflict with any law or regulation of the State of Colorado covering the business of the Employer or the Union, then in such event both parties agree that they shall meet immediately for the purpose of working out a clause or provision that shall be in complete compliance with such law or regulation.

3. Nothing herein shall preclude either party hereto from attacking the legality of any clause or provision hereof, and in the event of any such attack which shall subsequently be made, both parties hereto agree to pursue such proceeding to test such legality to the end of arriving as rapidly as possible at a final determination of such legality.

4. The Union hereby agrees to indemnify and hold harmless the Employers from any losses of damage resulting from any act or omission of the Union in breaching or failing to comply with any applicable law. The Employer also hereby agrees to indemnify and hold harmless the Union from any act or omission of the Employer in breaching or failing to comply with any applicable law.

## SECTION 6 - DUES CHECK-OFF

The Employer shall deduct from wages of each employee who has signed a check-off authorization conforming to Federal law, and transmit monthly to the Union (or to any agencies designated by said Union for the collection of such money), the sum for each hour paid which the Union has specified, or specifies from time to time and so advises the Employer in writing, as the portion of each employee's Union dues to said Union, to its International Union, or to any other affiliate of the International Union, subject to check-off. The transmitted sums shall be accompanied by a statement, in a form specified by the Union, reporting the name of each person whose dues are being paid and the number of hours each employee has been paid. Such dues shall be paid over to the Union on or before the 25th day of each month for all hours each employee has been paid in the payroll periods ending in the preceding calendar month.

## SECTION 7 - SCAFFOLDING

1. All pudlock scaffolding must be built level with the brick work, and all scaffolding must be built under the supervision of a brick foreman. All scaffolds shall be at least 5, 2" x 10" or 5, 2" x 12" plank wide with 20 inches clearance between material and wall.

2. No mason shall build a wall to a greater height than approximately five feet four inches (5'4") for scaffold. No mason shall build a wall with masonry units that weighs over forty (40) pounds per unit to a greater height than approximately four feet for scaffold.

3. Outside scaffolds must have a handrail for protection, approximately four feet (4') in height, when scaffold is ten feet (10') from ground or side walk, and is stocked from the outside. When scaffold is stocked from the inside, the handrail shall be approximately three feet (3') in height. All masons are prohibited

from working on buildings or scaffolds until this requirement is complied with.

4. The Employer and the Union agree that safety on the job is of the utmost importance. Every effort shall be made toward safe and sanitary conditions. It shall not be a violation of this Agreement for any employee to refuse to work under unsanitary or unsafe conditions, nor shall any employee be discharged for refusing to work under such conditions. However, he/she shall work in another area on the project until the specific condition is either changed or agreed to be safe by both parties.

(a)  When any safety equipment is required it shall be furnished by the Employer with the exception of personal clothing and hard hats which shall be furnished by the employees.

(b)  Safety standards as contained in the Occupational Safety and Health Administration Standards must be observed on all jobs by Employers and employees.

5.  All scaffolds over thirteen feet six inches (13'6") in height shall be tied securely, and all planks shall be overlapped by not less than twelve inches (12").

6. A ladder shall be required on all scaffolding and it shall be fastened securely. This is not to be construed with a steel swinging scaffold.

7. Members working at pointing, cleaning and caulking shall do their own rigging and take them down.

8. Mortar boards shall be off the ground or floor a minimum of fourteen inches (14").

9. When using 6'6" walk-through tubular steel scaffolding, the material shall not be stocked over 5'4" above the walking platform from which the masons are working. This restriction applies to concrete masonry units only.

### SECTION 8 - JOB STEWARD

There shall be a steward on each job who shall be appointed by the Business Representative or elected by the employees on the job with the approval of the Union. He/She shall keep a record of the workers laid off and discharged, and shall take up all grievances on the job and try to have the same adjusted, and in the event he/she cannot adjust them, he/she must promptly report that fact to the Business Representative of the Union so that efforts can be made to adjust any matter without a stoppage of work. He/She shall see that the provisions of this Agreement are complied with and report to the Union the true conditions and facts. The Employer agrees that the job steward will not be discharged or transferred until after proper justification has been given to the Union, and further, when employees are laid off the job, the steward will be the last person laid off, providing he/she is capable of performing the work in question. The

9

steward shall be given consideration on all overtime employment, but he/she shall not be retained if he/she is to be required to replace an employee regularly employed in the crew required to work overtime on a particular operation or piece of work. The steward on the job shall call all time.

### SECTION 9 - TRADE RULES

1. Masons will not be permitted to perform brick or masonry work on the construction of building on a piece-work or volume basis.

2. The Employer shall provide a tool box on each job. On every job involving six (6) or more stories, or on widely dispersed projects, the employees may remain at the tool box until starting time and shall be allowed to return to the tool box by quitting time. On all other jobs, employees shall be at their regular place of work at starting time and shall remain at their places of work until quitting time.

3 . All striking of joints must be performed by the mason who is laying up the work unless he/she requests another mason to assist him/her. If a special jointer is required, Contractors shall provide the same in sufficient numbers so that each person can strike his/her own work.

4. There shall be no putting up the line until all bricks for the next course are in position and not more than one course at a time, except in case of obstruction (the line to be used on both sides of a wall exceeding nine (9) inches in thickness), and no mason shall spread mortar or lay brick until the line is up, tightened and the trig set. No other than the people in charge of the sticking and tightening ends shall be allowed to call for or put up the line, and every mason must lay to the line until it is out. All brick shall be laid with solid head joints. The trig may be set before the line is up providing the line is out.

5. When material to be handled weighs over forty (40) pounds per unit and the wall is built over three feet four inches (3'4"), two masons shall be used to lay such material.

6. The apprenticeship standards, as approved, shall govern the employment of apprentices, and any changes in the standards must be accomplished by the methods specified in the standards and be properly approved.

7. When hollow tile or other materials are used in floors, materials shall be stacked in a convenient manner and a mason must place same in position.

8. Whenever concrete is used in connection with brick or tile walls, terra cotta or cut stone, either in backing up a wall or filling in a pier, the concrete must be put in place by masons. Also, when a grout pump is used, a mason shall control the nozzle.

9. All mason material cut by saws must be done by masons. No saw

shall be used without a guard. No mason shall use a cutting blade without protection of safety glasses or a shield. The Employer shall furnish rubber gloves, respirator and shields or safety glasses, and apron. Heat shall be provided for wet saws when needed.

10. Masons must be provided with good drinking water, in a clean receptacle that is not used for any other purpose, and also individual drinking cups. Ice water will be furnished from June 1 to September 1 of each year by the contractor.

11. Each job shall have a foreman. A foreman may work with his tools except that when seven or more masons are employed, the foreman shall not work with the masons.

12. Employees who are members of the Union shall have the right to work for any Union Employer of their choice.

13. Employers are at liberty to employ and discharge masons as they see fit.

14. When an employee is injured on the job, reasonable effort shall be given to see that the employee immediately receives the necessary medical aid and to see that the employee is assisted to his or her home or to a hospital or other medical facility if required. Employees injured on the job and unable to return to work as a result of such injury shall receive wages for the full day on the day injured.

15. Whenever a new employee is hired, he/she shall be required, by his/her employer, within 24 hours, to register with the Union and inform the Union of his/her address, employer and the project upon which he/she will commence employment. Upon receipt of this information the Union immediately shall issue the new employee a registration slip which indicates that this provision has been complied with. Such registration slip shall be issued without regard to Union membership and without requirements excep  those set forth in this paragraph.

16. It is the purpose and intention of the parties that all apprentices, improver apprentices, and trainees shall receive on-the-job training and experiences in the craft of bricklaying and other skills of the masonry trade, and that neither apprentices, improver apprentices, nor trainees shall be used for the performance of menial tasks or as cheap labor. The parties, therefore, agree that every apprentice, improver apprentice, and trainee shall spend not less than 80% during each work week in the actual performance of laying brick or other masonry units.

17. During each work day, there shall be one ten (10) minute rest period at 10:00 a.m. This is to be taken in the immediate work area. This does not apply if starting time is 9:30 a.m. or after. Said rest period shall be taken on company time and shall be considered as time worked for all purposes.

18. Whenever it shall be necessary to terminate the employment of any workmen covered by this contract, a termination slip shall be given to him/her with his/her final check. Said termination slip must

11

give the reason for the termination.

## SECTION 10 - OBLIGATION OF PARTIES

1. This Agreement shall be effective commencing January 1, 1991, shall continue in full force to and including January 1, 1997, and shall be automatically continued yearly thereafter unless written notice of decision to negotiate a new Agreement, in whole or in part, is given in writing by either party to the other not later than sixty (60) days nor more than ninety (90) days prior to the expiration date or any anniversary date thereafter. The parties may at any time mutually agree to change or amend any part of this Agreement and such changes or modifications shall not effect the continuing of this Agreement.

2. For the sole purpose of negotiating adjustments in the hourly wage rates as set forth in Appendix A of this Agreement, either party may reopen this Agreement for negotiations by written "Notice of Wage Reopening" to the other party not later than thirty (30) days prior to January 1, 1993. The parties will meet promptly thereafter in an endeavor to reach agreement. If the parties fail to reach an agreement on the wage rates by the anniversary date, the rates in dispute shall be submitted to arbitration, in accordance with the provisions of Section 3. paragraph 3 and 4. It is understood and agreed that failure to reach an agreement shall not give either party right to terminate or alter this Agreement, and that the wage specified in Appendix A in this Agreement shall remain in effect while the procedures for final and binding arbitration are conducted.

3. The Union shall have the option of allocating a portion or all of an increase in wage rates for the period beginning January 1, 1991 and any increases negotiated or determined pursuant to paragraph 2 of this Section among the various benefit funds specified in Appendix A.

## SECTION 11 - TRUST FUNDS

There are in existence at this time the following jointly controlled Trusts established in accordance with Section 302 of the Labor Management Relations Act:

- Brickmasons Health and Welfare Fund of Colorado
- Bricklayers and Trowel Trades International Pension Fund (IPF)
- Colorado Brickmasons Training Fund
- Colorado Brickmasons Pension Fund

1. In addition to wages and other payments herein provided for, beginning January 1, 1991, and for the duration of this Agreement and for any renewals or extensions thereto, the Employer shall pay the specified contributions to the following designated funds.

### A. BRICKLAYERS AND TROWEL TRADES INTERNATIONAL PENSION FUND

1.(a) Effective January 1, 1991, the contribution to the Bricklayers and Trowel Trades International Pension Fund (IPF) shall

be a total of fifty ($ .50) cents for each hour or portion thereof for which a covered employee receives pay.

(b) Effective May 1, 1991, contributions to the IPF shall be a total of one dollar ($1.00) for each hour or portion thereof for which a covered employee receives pay.

(c) Effective   May 1, 1992, contributions to the IPF shall be increased ten cents (.10) per hour, unless waived pursuant to paragraph 1 (a) (3) of this Section.

(d) Effective   May  1,1993, contributions to IPF shall be increased ten cents (.10) per hour, unless waived pursuant to paragraph 1 (a) (3) of this Section.

(e) Effective   May  1, 1994, contributions to the IPF shall be increased ten cents (.10) per hour, unless waived pursuant to paragraph 1 (a) (3) of this Section.

2.   The payments required above shall be made to the Bricklayers and Trowel Trades International Pension Fund, which was established under an Agreement and Declaration of Trust, dated 1 July 1972.

3. It is understood and agreed that the provisions of subparagraph A 1 (a) of Section 11, which provide for contributions to the Bricklayers and Trowel Trades International Pension Fund, were negotiated based on an agreement that the Colorado Brickmasons Pension Fund will be merged into the IPF. It is further agreed that $.50 per hour of the contribution rate is a supplemental contribution for the purpose of funding liabilities of the Colorado Brickmasons Pension Fund which exist at negotiation of this Agreement, and that contributions shall be increased by $.10 per hour on the first anniversary of this Merger Agreement, by an additional $.10 per hour on the second anniversary of this Merger Agreement and a further $.10 per hour on the third anniversary of this Merger Agreement. These $.10 increments can be waived by the Trustees of the International Fund upon advice of the Fund's Actuary that such increases are not required

Further, it is understood that the terms of the merger are conditioned upon the continuation of contributions at the rates set forth above for a sufficient period of time following the effective date of this Agreement but not less than five years to fund the unfunded vested liabilitys that exist under the Colorado Brickmasons Pension Fund as of this Merger Date.

B. BRICKMASONS HEALTH AND WELFARE FUND OF COLORADO

1.(a) Effective January  1, 1991, the contribution to the Brickmasons Health and Welfare Fund of Colorado shall be a total of one dollar ten ($1.10) cents for each hour or portion thereof, for which a covered employee receives pay.

(b)  Effective November 1, 1991, the contribution to the Brickmasons Health and Welfare Fund of Colorado shall be a total of one dollar fifty ($1.50) cents for each hour or portion thereof, for which a

13

covered employee receives pay.

2. The payments required above shall be made to the Brickmasons Health and Welfare Trust Fund of Colorado now in effect.

3. It is understood and agreed that the provisions of subparagraph B 1 of Section 11 which provide for contributions to the Brickmasons Health and Welfare Trust Fund of Colorado were negotiated based on an agreement that the Brickmasons Health and Welfare Trust Fund of Colorado will be merged into the Operating Engineers Health and Welfare Trust Fund for Colorado.

C.

1. The Employer hereby agrees to be bound by and to the above-stated Agreements and Declarations of Trusts, as though he had actually signed the individual documents and further agrees to be bound by all actions taken by the Trustees of these funds pursuant to said Agreements and Declarations of Trusts.

2. The Employer hereby irrevocably designates as its representative on the above-stated Boards of Trustees such Trustees as are now serving, or who will in the future serve, as Employer Trustees, together with their successors.

3. For the purpose of this Section each hour paid for, including hours attributable to show-up time, and all other hours for which pay is received by the employee in accordance with this Agreement, shall be counted as hours for which contributions are payable to each fund designated in this Section.

4. Contributions shall be paid on behalf of all covered employees starting with the employee's first day of employment in a job classification covered by this Agreement. This includes, but is not limited to, journeyman, apprentices, trainees and probationary employees.

5. All contributions shall be made at such time and in such a manner as the Trustees require; and the Trustees have shall the authority to have an independent Certified Public Accountant audit the time books, payroll and wage records of the Employer for the purpose of determining the accuracy of contributions to the funds designated in this Section. Any Employer found, as a result of an audit ordered by the Trustees of one of the fringe benefit funds, to have been substantially inaccurate in reporting shall be charged the full cost of such audit.

6. If the Employer fails to make any contributions specified in this Section, within twenty (20) days after the date required by the Trustees, the Union shall have the right to take whatever steps are necessary, including the withdrawal of manpower, to secure compliance with this Agreement, any other provision hereof to the contrary notwithstanding, and the Employer shall be liable for all cost for collection of payments due together with attorney's fees and such liquidated damages as may be assessed by the Trustees. The Employers

14

liability for payment under this Section shall not be subject to or covered by any grievance or arbitration procedure or any "no strike" clause which may be provided for or set forth elsewhere in this Agreement.

## SECTION 12 - TRUST PAYMENTS AND REPORTS

1. Payments to the Trust Funds referred to in Section 11 shall be due on the 25th day of each month for all work performed during payroll periods ending in the preceding calendar month. Report of hours worked by each employee covered by this Agreement during each calendar month shall be made to the Trusts by the 25th day of the following month. Payments and reports shall be made to such parties, in such manner, and on such forms as directed by the Trusts.

2. Payments required by Section 11 shall be delinquent if not made on or before the 25th day of each calendar month for all work performed during the payrol: periods ending in the preceding calendar month. In the event the Employer shall fail to make any payment to the aforesaid Trust Funds required by this Agreement on or before the due date of such payment, the Employer shall be liable to the Trustees of the respective Trust Funds for all cost and expenses of collection of the Employer's indebtedness, including, without limitation, auditor's fees and costs, attorney's fees and costs, clerical and administration cost of the office of the Fund Manager and interest on the delinquent account at least the rate of 1.5% per month, all in addition to the amount of the delinquency.

## SECTION 13 - UNION MEMBERSHIP

1. The Employer recognizes and acknowledges that the Union is the exclusive representative of all of its employees and the classification of work falling within the jurisdiction of the Union, as defined in this Agreement.

2. All Employees covered by the terms of this Agreement shall be required to become and remain members of the Union as a condition of employment from and after the eighth day following the date of their employment or effective date of this Agreement, whichever is later. An Employee shall be considered to be a member of the Union in good standing if he tenders to the Union the periodic dues and initiation fees uniformly required as a condition of requiring and retaining membership.

3. The Employer shall have the entire freedom of selectivity in hiring employees and may reject any worker who has been refe:red by the Union provided however, that there shall be no discrimination by the Employer against any employee by reason of his Union affiliation or lack of a Union affiliation or by reason of race, creed, color, national origin, sex or disability.

## SECTION 14 - EQUALLY FAVORABLE TERMS AND CONDITIONS

If the Union enters into any agreement, in or whole or in part,

15

oral or written, with any other Employer within the area covered hereby which contains any term or terms which are more favorable to such other Employer than the terms contained in this Agreement, the Employers covered by this Agreement, shall be at liberty to furnish written notice to the Union of such inequity. If the Union does not correct such inequity within eight (8) days after the date of receipt of such written notice, then this Agreement shall be deemed forthwith to be modified and amended to include such more favorable term or terms, provision or provisions, wage rate or wage rates, working condition or working conditions, or work practice or work practices.

Upon written request, the Union shall furnish to that Employer a copy of said Agreement or Agreements within eight (8) days of such request. This Section will exclude maintenance agreements, and Presidents agreements. Any of these excluded agreements will be made available to Employers.

Nothing contained in this Section 14 shall be construed to prevent the Union from establishing special wage rates for brick and block masonry contractors on a particular job or on a particular class of work or type of construction, or in certain designated counties or other areas, provided that such special wage rates shall be lower than those contained in this contract and provided that all brick and block masonry contractors who are parties to this contract shall be afforded an equal opportunity to bid for such work and to have the benefit of such special wage rates. The Union shall have the exclusive and absolute right to determine whether there shall, or shall not, be special wage rates on a given job, class of work or type of construction, to specify such wage rates, and to discontinue them at the completion of any work authorized by this special understanding. The Union will be in full compliance with this contract clause to the extent that it makes available such different agreement to the Colorado Mason Contractors Association, Inc. and all signatory Employers at least seven (7) working days prior to the bid of any work or project so covered.

### SECTION 15 - BONDING

1. Each Employer signatory to or performing work covered by this Agreement shall furnish to the Union a wage and fringe benefit payment bond (or letter of credit or such other similar security) in such form as may be approved by the currently designated Administrator of the various Fringe Benefit Funds included in this Agreement.

| Number of Employees | Face Amount |
|---|---|
| 1 to 5 employees | $ 1,000.00 per employee |
| 6 to 20 employees | $15,000.00 |
| 21 and over employees | $25,000.00 |

If and when the Employer shall employ more employees than present bond coverage for a period in excess of ten (10) days, the Employer will then furnish the additional amount of bond required.

Prior to the commencement of any work covered by this Agreement, upon request of the Union or Trust Administrator, the Employer shall furnish an estimated weekly payroll setting forth the maximum number

of employees to be engaged in work covered by this Agreement and the estimated length of employment.

If at any time such bond is canceled by the surety pursuant to notice as provided in said bond, the Employer shall immediately furnish to the Union a new wage and fringe payment bond in the same form and face amount.

If at any time the above bond has not been furnished to the Union as above set forth, the Union shall refuse to furnish any workmen to the Employer and/or the Union shall cause employees covered by this Agreement to be removed from any of the Employer's jobs or projects.

All terms and conditions of this Article shall apply equally to any subcontractor to whom the Employer has subcontracted work covered by this Agreement; where such subcontractor will perform covered work for a period in excess of ten (10) days. Additionally, in the event any subcontractor fails to secure the required bond (or other security) then the Union shall immediately notify the contractor of this omission.

## SECTION 16 - TRADE COMMITTEE

There shall be a Trade Committee consisting of three (3) members appointed by the Colorado mason Contractors association, Inc. and three (3) members appointed by the Union. The Trade Committee shall have the power to investigate any alleged violation of the provisions of this Agreement upon mutual request in writing of the parties hereto. When a matter has been properly submitted to the Trade Committee, it shall have the right to summon and question any party to this Agreement or his/her or its representatives. The Trade Committee shall meet within forty-eight (48) hours upon the request of either party. A quorum of the Trade Committee shall consist of two (2) members appointed by the Union and two (2) members appointed by the Contractor's Association. In the event that a member of the committee appointed by the Union is absent, his vote shall be cast by the other two members appointed by the Union. In the event that a member of the committee appointed by the Association is absent, his vote shall be cast by the other two members appointed by the Association. Decisions of the Trade Committee on matters properly submitted to it shall be conclusive and binding on all parties. Upon mutual request in writing by the parties hereto, the Trade Committee may also make determinations regarding the use of any material or process not covered by this Agreement. When such cases are properly submitted to the Trade Committee, its decision shall be conclusive and binding on all parties. In the event the Trade Committee fails to render a decision within the (10) calendar days after a dispute is presented to it, then any party to the dispute may, within twenty five (25) working days after the matter is presented to the Trade Committee, submit the dispute to arbitration, in accordance with the provisions of Section 3, paragraph 3 and 4. Nothing herein shall be construed to require any party to exhaust remedies provided in this section 16 as a condition precedent to pursuing the grievance or arbitration procedures of Section 3, or as a condition precedent to the commencement of an action in a court of law or equity.

## AMENDMENT NO. 1

### TO THE AGREEMENT BY AND BETWEEN

### INDEPENDENT MASONRY CONTRACTORS

### AND INTERNATIONAL UNION OF BRICKLAYERS & ALLIED CRAFTSMEN LOCAL 7 COLORADO AFL-CIO

### INTERNATIONAL UNION OF BRICKLAYERS & ALLIED CRAFTSMEN LOCAL ONE OF COLORADO AFL-CIO

The parties to the captioned agreement, effective January 1, 1991, hereby agree to amend said agreement as follows:

Section 10, Obligation of parties, Paragraph 1 shall be amended to reflect that the agreement shall continue in full force and effect to and including December 31, 1998.

Section 10, Obligation of Parties, Paragraph 2 shall be amended to reflect that, for sole purpose of negotiating an adjustment to the hourly wage rates set forth in Appendix A, either party may reopen the Agreement by means of a written "Notice of Wage Reopener" delivered to the other party not later than thirty (30) days prior to May 1, 1996, thirty days (30) days prior to January 1, 1997 or thirty days (30) days prior to January 1, 1998.

Section 11, Trust Funds, shall be amended to reflect the merger of the Local's health fund with those of International Union of Bricklayers and Allied Craftsmen, AFL-CIO by deleting the words "Brickmasons Health and Welfare Fund of Colorado", and adding the words "Bricklayers International Health Fund".


INDEPENDENT MASONRY CONTRACTOR

INTERNATIONAL UNION OF BRICKLAYERS & ALLIED CRAFTSMEN LOCAL 7 COLORADO, AFL-CIO (INTERNATIONAL UNION OF BRICKLAYERS & ALLIED CRAFTSMEN LOCAL NO. ONE OF COLORADO, AFL-CIO)


BY:_____    BY:_____

RECEIVED DEC 28 1995

---

## APPENDIX A

***Payments required by this Agreement shall be at the rate for hours worked listed in SCHEDULE "A" OF THE NEW WAGE AND BENEFIT FUND RATES for over-time as defined in this Agreement shall be at time and one-half the wage rates listed below.***

This amended Schedule supersedes all previous schedules and is to be    used beginning May 1, 1995.

| EFFECTIVE DATE | 5\1\95 | 11\1\95 |
|---|---|---|
| **WAGES** | | |
| TOTAL BASE RATE | $16.40 | $16.60 |
| LOCAL DUES CHECK-OFF | $ 0.41 | $ 0.41 |
| IU DUES CHECK-OFF | $ 0.20 | $ 0.20 |
| BASE RATE LESS DUES CHECK OFF | $15.79 | $15.99 |
| **FRINGES** | | |
| INTERNATIONAL UNION | | |
| PENSION FUND | $ 1.30 | $ 1.50 |
| INTERNATIONAL HEALTH | | |
| FUND | $ 2.37 | $ 2.37 |
| TT TRAINING FUND | $ 0.00 | $ 0.05 |
| TOTAL | $20.07 | $20.52 |

Accordingly, under the provisions of the current Agreement, page 12, Section 10 - OBLIGATIONS OF PARTIES, paragraph 3. The Union shall have the option of allocating a portion or all of an increases negotiated or determined pursuant to paragraph 2 of this Section among various benefit funds specified in Appendix A.

---

INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTSMEN
LOCAL NUMBER ONE OF COLORADO
AFL-CIO
INTERNATIONAL UNION OF BRICKLAYERS & ALLIED CRAFTSMEN
LOCAL 7 COLORADO, AFL-CIO

Dated this day __ - __ -95.

For the Employer                              For the Union

_____          _____

Case 1:06-cv-00030-LDH    Document 1-2    Filed 08/24/2006    Page 23 of 23

TO 7779774
PAGE 81

Jun 13-1996  11:23 AM   FROM           INT'L BAC LOCAL 7 CO

06/17/1996  11:25    303-777-9774                    Rate Number

For Office Use Only:    Agreement Number

**International Union of Bricklayers & Allied Craftworkers**
Department of Collective Bargaining Services
815 Fifteen Street, N.W.
Washington, DC 20005

38969
01CO on File

## SCHEDULE OF NEW WAGES AND BENEFIT FUND RATES
(AS SET FORTH IN THE AGREEMENT)
(COMPLETE A SEPARATE SCHEDULE FOR EACH RATE SET FORTH IN THE AGREEMENT)
TYPE OF WORK (Please circle) All / Commercial / Heavy & Highway / Industrial / In-Plant / Refractory / Residential

Brett Terry Masonry Inc.

This Agreement is entered into by and between _____
_____ and the International Union of Bricklayers and Allied Craftworkers Local Union
No. 7 of Colorado . This Agreement shall be effective commencing  May 1, 1996
and continue to and including  December 31, 1998 . This shall cover the crafts of
(Please circle) Bricklayer / Stone Mason / Cement Masons / Marble Mason / Plasterer / Mosaic Worker /
Terrazzo Worker / Tile Layer / Pointer, Cleaner & Caulker / Marble Finisher / Terrazzo Finisher / Tile Finisher
for the counties of Denver, Adams, Arapahoe, Douglas, Jefferson, Clear Creek, Gilpin, Elbert, Eagle, Summit
and Boett within the state of  Colorado .

Former Local 7 CO

EFFECTIVE DATE _____ May 1, 1996
BASIC HOURLY RATE                   $17.12
°DUES CHECK-OFF                     $ 0.63
       °Local 7 Dues  5.42
       °IU Dues       3.21
BASE RATE LESS DUES CHECK OFF $16.49

IU PENSION                          $ 1.50
IU ANNUITY                          $ 0.00
LOCAL PENSION                       $ 0.00
HEALTH & WELFARE (H\&F)             $ 2.50
BACPAC (DED)                        $ 0.00
APPRENTICESHIP TRAINING             $ .05
     (°O Trowel Trades)

## TOTAL                            $21.17

Future unallocated increases ( if allocated, complete a separate schedule for each increase)

|  |  |  |  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | 1997 | $0.60 | 5 | 1 | 1 1997 | $ 0.20 | 1 | 1 1998 | $ **0 |
| 1 | 1 | 19 | $ | 1 | 1 | 19 | $ | 1 | 1 19 | $ |
| 1 | 1 | 19 | $ | 1 | 1 | 19 | $ | 1 | 1 19 | $ |

° These amounts are to be included in the Basic Hourly Rate.   **Wage Opener

**For the Employer**

Brett Terry Masonry Inc.
Name (Company or Association)

5984 South Prince Street, Suite 204
Address

Littleton, Colorado 80120              Zip Code
City and State

303-798-9463
(Area Code)  Phone Number

By _Brett M. Terry, President_
Signature and Title

**For the Union**
International Union of Bricklayers & Allied
Craftworker, Local No. 7  of  Colorado

_St. D. Clark_
Signature

President, IUBAC Local 7 CO
Title

NOTE: Forward a copy of this jointly
signed Schedule to the International Union
of Bricklayers and Allied Craftworkers
at the address indicated at the top of this
form